UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| REGINA HERNANDEZ,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN[1],<br>Acting Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No. EDCV 12-1016 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts. [See JS 2]. In a November 18, 2010 written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge

---

[1] Carolyn W. Colvin is substituted for her predecessor in office, Michael J. Astrue. See Fed. R. Civ. P. 25(d).

1  ("ALJ") found that plaintiff had severe impairments consisting of hydrocephalus (post shunt)[2], headaches,
2  and mood disorder, but that she retained the residual functional capacity ("RFC") to perform her past
3  relevant work or alternative work that exists in significant numbers in the national economy. [See JS 2;
4  Administrative Record ("AR") 48-59]. Accordingly, the ALJ concluded that plaintiff was not disabled at
5  any time through the date of his decision. [AR 59].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Treating physician's opinion**

Plaintiff contends that the ALJ erred in evaluating the opinion of plaintiff's primary care physician, Dr. Luke.

On August 20, 2010, Dr. Luke completed a form assessing plaintiff's ability to do work-related

---

[2] Hydrocephalus is a condition in which the primary characteristic is excessive accumulation of fluid in the brain. It is most often treated by surgically inserting a shunt system (consisting of a flexible plastic tube, a catheter, and a valve) that diverts the flow of excessive fluid to an area of the body where the fluid can be absorbed as part of the normal circulatory process, such as the abdominal cavity. See Nat'l Inst. of Neurological Disorders and Stroke, Hydrocephalus Fact Sheet, available at http://www.ninds.nih.gov/disorders/hydrocephalus/detail_hydrocephalus.htm (last accessed June 20, 2013).

2

mental activities. Dr. Luke checked boxes indicating that plaintiff was "seriously limited, but not precluded," "unable to meet competitive standards," or had "no useful ability to function" in all of the mental functional abilities listed. [AR 484-485].

Plaintiff did not list Dr. Luke as a treatment provider in her written disability reports. [See AR 145-148, 161-165, 188-190]. During the administrative hearing, she testified that Dr. Luke was her primary care doctor. [AR 11]. Plaintiff agreed with the ALJ when asked whether Dr. Luke was a "gatekeeper doctor . . . who you have to go to before your insurance will allow you to see other specialists[.]" [AR 11]. There were no treatment reports from Dr. Luke in the record.

The ALJ is required to provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ permissibly gave "little weight" [AR 56] to Dr. Luke's controverted disability opinion because Dr. Luke did not explain the medical basis for his assessment, which was not supported by any clinical findings or objective data. [AR 56]. See Bayliss, 427 F.3d at 1217 (noting that an ALJ need not accept a physician's opinion that is conclusory and inadequately supported by clinical findings); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that the ALJ did not err in giving "minimal evidentiary weight" to controverted treating source opinions that were "in the form of a checklist," and lacked supportive objective medical findings). Asked to provide medical or clinical findings supporting his opinion, Dr. Luke wrote that plaintiff "had brain surgery. Since then unable to work. . . . Surgery is not a success yet." [AR 485]. Dr. Luke apparently was referring to surgery that plaintiff underwent in December 2007 to implant a shunt system to treat her hydrocephalus. [See AR 206-209]. Dr. Luke did not perform that surgery, nor is there any indication in the record that he was involved in her surgical follow-up care or shunt maintenance. [See AR 197-339, 375-482]. Dr. Luke did not provide any supporting clinical or objective findings to substantiate his conclusory assertion that plaintiff had disabling mental functional limitations or that her surgery some two and a half years earlier was unsuccessful.

The ALJ also noted that the objective medical findings in the record and plaintiff's reliance on over-

1  the-counter medication to treat her headaches were inconsistent with Dr. Luke's disability opinion, as were
2  the opinions of the Dr. Debolt, the medical expert, and Dr. Maze, the consultative examiner. [AR 11-13,
3  53-56, 340-344]. See Batson, 359 F.3d at 1195 ("[A]n ALJ may discredit treating physicians' opinions that
4  are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.")
5  (citations omitted). Dr. Debolt, a specialist in neurology, testified that plaintiff's treating neurologist, Dr.
6  Mesiwala, had replaced and reprogrammed the shunt based on plaintiff's subjective complaints of
7  headaches, but that there was no objective evidence of shunt malfunction on CT scans or otherwise. [AR
8  12-13]. Dr. Maze, who characterized plaintiff as a "poor historian," found "no definite focal findings" on
9  neurological examination. She opined that plaintiff could perform medium work. [AR 342].

10  Plaintiff argues that in addition to receiving routine care, as the ALJ noted, she "made many trips
11  to the hospital for headaches and shunt adjustments." [JS 13]. She also contends that "simply because the
12  objective evidence does not show there is anything wrong with the shunt does not mean that plaintiff is not
13  feeling pain or having headaches that are debilitating." [JS 15].

14  Based on his review of the record, Dr. Debolt testified that he "found about two or three emergency
15  room visits for headaches," along with reports of shunt replacement and reprogramming in response to
16  plaintiff's subjective complaints. [AR 13, ]. Plaintiff sought treatment for headaches and abdominal pain
17  at Loma Linda University Medical Center in July 2008 and December 2008 and was evaluated for possible
18  shunt malfunction, but that her doctors determined that the shunt was intact, was not "problematic," and
19  "was not the cause of the pain." [AR 321, 336]. Treatment reports from 2009 indicate that plaintiff
20  underwent periodic reprogramming of the shunt valve to regulate drainage of the excessive fluid in response
21  to her subjective complaints of headaches and head pressure. Her treating neurologist, Dr. Mesiwala,
22  consistently found no neurological deficits. [See AR 376-386]. In May 2009, her shunt valve was replaced.
23  Although the surgical and treatment reports indicate that her existing shunt system was functioning,
24  plaintiff's neurologist, Dr. Mesiwala, concluded that a different kind of programmable shunt valve "would
25  give us more flexibility in terms of adjustment and pressure control." [AR 475; see AR 376-479]. On a
26  follow-up visit in August 2009, Dr. Mesiwala wrote that "from a surgical standpoint [plaintiff] is doing well.
27  There is no objective evidence that her shunt is not working or that she is under draining or over draining."
28  [AR 469]. Plaintiff had no neurologic deficits. Dr. Mesiwala referred plaintiff to an ear, nose, and throat

4

specialist for a history of sinus congestion. [AR 468-469]. Nothing in those treatment reports supports Dr. Luke's opinion that plaintiff's brain surgery caused the disabling mental functional limitations he checked off.

Plaintiff also contends that the ALJ erred in failing to recontact Dr. Luke to ascertain the basis for his opinion or to obtain additional evidence. [AR 7]. That contention lacks merit. The ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Dr. Luke was asked to identify medical or clinical findings supporting his opinion and failed to do so, so his opinion is not ambiguous in that respect. The record contained other substantial treating, examining, and nonexamining source evidence, so it was not inadequate to allow for proper evaluation of the evidence. In these circumstances, the ALJ did not commit legal error by failing to recontact Dr. Luke. See Mayes, 276 F.3d at 459-460 (rejecting the argument that the ALJ breached his duty to develop the record as an impermissible attempt to shift the burden of proving disability away from the claimant).

**Examining psychologist**

Plaintiff contends that the ALJ erred in rejecting the opinions of the consultative examining psychologist, Dr. Larson.

Based on a comprehensive psychological examination, Dr. Larson concluded that plaintiff had a mood disorder, not otherwise specified, and severe psychosocial stressors during the previous year. [AR 350-356]. Dr. Larson limited plaintiff to one- or two-step job instructions and non-public tasks. [AR 57, 355-356]. He also gave plaintiff a Global Assessment of Function ("GAF") score of 55, signifying moderate symptoms, such as flat affect or occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as having few friends or conflicts with peers or co-workers. [AR 355]. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Multiaxial Assessment, 27-36 (rev. 2000); see also Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998) (describing a GAF score as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment").

The nonexamining state agency medical consultant, Dr. Loomis, opined that plaintiff had an affective disorder. Dr. Loomis concluded that plaintiff could perform simple one- and two-step tasks;

maintain concentration, persistence and pace as related to such simple tasks; make adjustments and avoid hazards in the workplace; and interact adequately with coworkers and supervisors, but may have difficulty dealing with the demands of general public contact. [AR 361-374].

Dr. Larson's opinion was consistent with that of Dr. Loomis, the nonexamining state agency physician [AR 361-374] and was uncontroverted (except to the extent that Dr. Luke assessed additional limitations). Therefore, the ALJ was obliged to articulate clear and convincing reasons for rejecting Dr. Larson's opinion. See Lester, 81 F.3d at 830-831.

The ALJ explained gave "little weight" to Dr. Larson's opinion, including his GAF score, reasoning that the limitations Dr. Larson assessed were inconsistent with the "minimal" mental health treatment records and with recommendations for conservative follow-up care. [AR 55-56, 57-58]. The ALJ noted that plaintiff went to a county behavioral health clinic in May 2008 and June 2008. [AR 55-56]. She was diagnosed with major depressive disorder, recurrent and "rule out" anxiety disorder NOS. [AR 223-224]. Plaintiff was prescribed the antidepressant Lexapro and was given a counseling referral, but there is no indication that she followed up on the referral. She told Dr. Larson that she did not return to the county clinic for further treatment because she "kind of knew what was going on." [AR 351]. Between January 2009 and September 2009, plaintiff received prescriptions for antidepressants from her primary care providers at Loma Linda University Medical Center. [AR 56, 487-522]. There is no indication that she received mental health treatment after that date.

During the hearing, plaintiff testified that she stopped taking Lexapro because it had not helped her and made her "mentally foggy." [AR 19]. She also testified that she did not remember the last time she saw a psychiatrist or psychologist for treatment [AR 27].

Any error in the ALJ's evaluation of Dr. Larson's opinion is harmless. See McLeod v. Astrue, 640 F.3d 881, 886-888 (9th Cir. 2011) (holding that the harmless error rule ordinarily applied in civil cases applies in social security disability cases, and that the burden is on the party attacking the agency's determination to show that prejudice resulted from the error) (citing Shinseki v. Sanders, 556 U.S. 396, 406-409 (2009)). Although the ALJ did not include Dr. Larson's mental functional limitations in his RFC finding [AR 52], he included a limitation to simple, repetitive tasks with no general public contact in his hypothetical question to the vocational expert. [AR 36]. The vocational expert testified that the hypothetical

6

person was precluded from performing plaintiff's past relevant work but could perform the alternative unskilled jobs of office helper, bench assembler, and sorter of small agricultural products. [AR 36-38]. The ALJ made an alternative finding at step five that plaintiff could perform those jobs. [AR 58].

In light of the vocational expert's testimony during the hearing and the ALJ's alternative finding of nondisability at step five, plaintiff has not met her burden to show prejudice as a result of any error by the ALJ in evaluating Dr. Larson's opinion or excluding the limitations Dr. Larson assessed from the RFC finding.[3]

**Daily activities**

Plaintiff contends that the ALJ erred in finding plaintiff "not disabled" based on her daily activities. [See JS 21].

The ALJ found that plaintiff was partly credible. [AR 54]. He wrote:

> The claimant testified her head pain makes it impossible for her to do even simple tasks. However, despite her impairment, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant admitted activities of daily living including caring for her own personal hygiene needs, driving, shopping for groceries, preparing simple meals, and handling household finances. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The claimant's ability to participate in such activities undermines the credibility of the claimant's allegations of disabling functional limitations.

[AR 54].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§

---

[3] This conclusion makes it unnecessary to consider separately plaintiff's contention that the ALJ improperly excluded the mental functional limitations assessed by Drs. Larson and Loomis from his RFC finding.

404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan, 242 F.3d at 1148; see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885; see Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (same). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Contrary to plaintiff's argument, the ALJ did not equate plaintiff's daily activities with the ability to perform "full-time competitive substantial, gainful activity" [AR 22], nor did the ALJ base his finding of nondisability exclusively on plaintiff's daily activities. Instead, he permissibly relied on evidence of her daily activities in part to conclude that her subjective symptom testimony was not fully credible, and that she was able to perform more work-related activities than she acknowledged. [AR 54]. The Ninth Circuit has explained that

> [w]hile a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

Molina v. Astrue, 674 F.3d 1104, 1112-1113 (9th Cir. 2012) (internal quotation marks and citations omitted) (holding that the ALJ reasonably concluded that the claimant's activities, "including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering from debilitating panic attacks"); see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.2d 685, 693 (9th Cir. 2009) (holding that the ALJ reasonably

concluded that the claimant's daily activities "demonstrated better abilities than he acknowledged in his written statements and testimony" and "are inconsistent with the degree of impairment he alleges"); Burch, 400 F.3d at 679 (holding that the ALJ did not err in finding that the claimant's ability to care for her own personal needs, cook, clean, shop, interact with family, and manage her finances suggested that the claimant "was quite functional" and undermined the alleged severity of her impairments).

The ALJ did not rely solely on plaintiff's daily activities to support his credibility finding. He also pointed to a lack of objective evidence fully corroborating plaintiff's subjective complaints, material inconsistencies between plaintiff's own statements regarding her activities, inconsistencies between those statements and other substantial evidence in the record, plaintiff's use of only over-the-counter pain medication, and her minimal, conservative mental health treatment. [AR 52-58]. In addition, the ALJ permissibly determined that plaintiff's statements to Dr. Larson that she was collecting unemployment benefits and actively looking for work were inconsistent with her subjective allegations of disability. [AR 53-54, 352-353]. See Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988).

For these reasons, plaintiff's contentions regarding the ALJ's credibility finding lack merit.

## Conclusion

For the reasons described above, the Commissioner's decision is based on substantial evidence in the record and is free of legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

July 3, 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge